1
2
3
4
5
6
7
8                          UNITED STATES DISTRICT COURT

9                     FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   ISSIAH W. JACKSON,                        No.  2:12-cv-0691 TLN CKD P

12                  Petitioner,

13        v.                                   ORDER AND

14   ANTHONY HEDGPETH,                         FINDINGS AND RECOMMENDATIONS

15                  Respondent.

16

17        Petitioner, a state prisoner, is proceeding pro se with a petition for writ of habeas corpus

18   pursuant to 28 U.S.C. § 2254.  Petitioner was convicted by a jury of second degree murder and

19   related offenses in 2009.  He asserts five claims challenging his conviction and sentence as

20   violative of his Constitutional rights.  (ECF No. 1 ("Ptn."))  The petition is fully briefed.  (ECF

21   Nos. 12, 22.)  Upon careful consideration of the record and the applicable law, the undersigned

22   will recommend that the petition be denied.

23                                    BACKGROUND

24   I. Facts

25        In its affirmation of the judgment on appeal, the California Court of Appeal, Third

26   Appellate District, set forth the relevant factual background as follows:

27            In late 2006, defendant and January Keene had a turbulent on-
              again, off-again relationship. They argued a lot and defendant was
28            sometimes violent.   Once, defendant pinned Keene to the

                                           1

refrigerator, choked her and threatened to kill her. Defendant told Keene's prior boyfriend that she often upset him and knew how to push his buttons. Defendant became angry and jealous when Keene's male friends visited her. Defendant took a swing at one. Defendant argued with Keene about it and threatened to kill her.

On January 1, 2007, while Keene was visiting Christine Marsh, defendant came over and hit Keene in the face. Defendant had previously asked Marsh about Keene and whether she was a cop or a prostitute. According to Marsh, one minute defendant was ranting and raving; the next he was calm. On that and on another occasion, defendant had a gun.

Later on January 1, Brian Berry visited Keene. Defendant was there and was upset that Berry had come by. Defendant asked Keene, "How do you know I wouldn't peel this dude's cap?" FN2 Defendant told Keene "he wasn't going to do just like her last boyfriend, he was going to do more." Keene's prior boyfriend had shoved her head into a wall. FN3

FN2. To "peel a cap" means to shoot or hurt badly.

FN3. Keene's prior boyfriend, Kiyron Fergerson, was convicted of domestic violence of Keene.

About 1:00 a.m. on January 5, 2007, the police stopped defendant at 30th and L Streets for running a red light. Keene was in the passenger seat. The seat was reclined and Keene's eyes were closed. She had a small amount of blood on her temple and a weak pulse; she was not responsive. When the paramedic moved her head, his hand was covered in blood and a gray substance.

At the time of the stop, defendant was on the phone to 911. Defendant told both the 911 operator and the police who stopped him that Keene was shot at Franklin Boulevard and 21st Avenue; he claimed he was trying to get her to the hospital.

Keene was taken to the UC Davis Medical Center. An autopsy showed she had been shot in the back of her head. She died within minutes of being shot. Burned gunpowder on her skin indicated the gun was close, within six inches of her head. The pathologist removed two small bullet fragments, consistent with a .22–caliber bullet.

The police took defendant to the area of Franklin Boulevard and 21st Avenue in an attempt to confirm his story about the shooting. There was glass in the roadway. A patrol officer had discovered the glass around midnight; three vehicles had been vandalized and their windows broken, but none of the owners wanted to report the vandalism. Officers searched the area but found no bullets, casings or other signs of a shooting. Canvassing the area turned up no information about a shooting that night.

The police searched for evidence defendant was the shooter; they found no weapon in defendant's car. Criminalists analyzed both

defendant and the car for gunshot residue.  The conclusion from the testing of defendant's hands was that defendant had either fired a gun, had been near a gun that had been fired, or had handled something contaminated with gunshot residue.  There were particles characteristic of gunshot residue on the inside of defendant's left sleeve, his exterior right sleeve, and on his torso and the rear waistband of his pants.  The criminalist opined the gun that killed Keene was inside the car or at least pointed into the car.   She admitted the evidence was consistent with a shooter outside the car.

In the car with defendant's belongings, police found a letter from Keene to defendant. The letter was dated December 19, 2006. In it, Keene complained about defendant's lack of intimacy and that he treated her like a prostitute.  She told him to keep his money and Christmas gifts and not to come around anymore. "This is FINAL." (Original underscoring.)

In defense, defendant offered the testimony of several residents of the Franklin Boulevard and 21st Avenue area who claimed they heard a shooting that night. They did not report it to the police out of fear.

People v. Jackson, 2011 WL 2811221, **1-2 (July 19, 2011) ("Jackson"), also attached as

Respondent's Exhibit A at ECF No. 12-1.  The facts as set forth by the state court of appeal are

presumed correct.  28 U.S.C. § 2254(e)(1).

II.  Procedural History

   Following a jury trial in the Sacramento County Superior Court, petitioner was convicted

of second degree murder and two counts of being a felon in possession of a firearm.  (Ptn. at 1.)

On July 2, 2009, the jury convicted petitioner of the two firearm counts.  (3 CT 874, 874.1-874.2)

Jury deliberations were suspended until July 16, 2009.  On that day, the jury reconvened,

deliberated, and reached a verdict convicting petitioner of second degree murder.  (3 CT 880-882,

886.)  On September 11, 2009, the court sentenced petitioner to a state prison term of 110 years to

life.  (Ptn. at 1; 4 CT 1051.)

   Petitioner appealed the judgment to the California Court of Appeal, Third Appellate

District.  (Lod. Docs. 1-5.)[1]  On July 19, 2011, the court of appeal affirmed the judgment.  (Lod.

Doc. 6 ("Jackson," supra).)  Petitioner filed a petition for review in the California Supreme Court

(Lod. Doc. 7), which was summarily denied on October 19, 2011.  (Lod. Doc. 8.)

   Petitioner filed the instant petition for federal habeas relief on March 19, 2012.  (Ptn.)

---

[1] Lodged Documents refer to documents lodged by respondent on June 29, 2013.  (ECF No. 13.)

1

## ANALYSIS

2

I. AEDPA

3      The statutory limitations of federal courts' power to issue habeas corpus relief for persons

4  in state custody is provided by 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective

5  Death Penalty Act of 1996 (AEDPA).  The text of § 2254(d) states:

6              An application for a writ of habeas corpus on behalf of a person in
               custody pursuant to the judgment of a State court shall not be
7              granted with respect to any claim that was adjudicated on the merits
               in State court proceedings unless the adjudication of the claim-
8

9                  (1) resulted in a decision that was contrary to, or involved
               an unreasonable application of, clearly established Federal law, as
               determined by the Supreme Court of the United States; or
10

11                 (2) resulted in a decision that was based on an unreasonable
               determination of the facts in light of the evidence presented in the
               State court proceeding.
12

13      As a preliminary matter, the Supreme Court has recently held and reconfirmed "that §

14  2254(d) does not require a state court to give reasons before its decision can be deemed to have

15  been 'adjudicated on the merits.'"  Harrington v. Richter, 131 S. Ct. 770, 785 (2011).

16  Rather, "when a federal claim has been presented to a state court and the state court has denied

17  relief, it may be presumed that the state court adjudicated the claim on the merits in the absence

18  of any indication or state-law procedural principles to the contrary."  Id. at 784-785, citing Harris

19  v. Reed, 489 U.S. 255, 265 (1989) (presumption of a merits determination when it is unclear

20  whether a decision appearing to rest on federal grounds was decided on another basis).  "The

21  presumption may be overcome when there is reason to think some other explanation for the state

22  court's decision is more likely."  Id. at 785.

23      The Supreme Court has set forth the operative standard for federal habeas review of state

24  court decisions under AEDPA as follows:  "For purposes of § 2254(d)(1), 'an unreasonable

25  application of federal law is different from an incorrect application of federal law.'"  Harrington,

26  supra, 131 S. Ct. at 785, citing Williams v. Taylor, 529 U.S. 362, 410 (2000).  "A state court's

27  determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded

28  jurists could disagree' on the correctness of the state court's decision."  Id. at 786, citing

4

1  Yarborough v. Alvarado, 541 U.S. 652, 664 (2004).  Accordingly, "a habeas court must

2  determine what arguments or theories supported or ... could have supported[] the state court's

3  decision; and then it must ask whether it is possible fairminded jurists could disagree that those

4  arguments or theories are inconsistent with the holding in a prior decision of this Court."  Id.

5  "Evaluating whether a rule application was unreasonable requires considering the rule's

6  specificity.  The more general the rule, the more leeway courts have in reaching outcomes in

7  case-by-case determinations.'"  Id.  Emphasizing the stringency of this standard, which "stops

8  short of imposing a complete bar of federal court relitigation of claims already rejected in state

9  court proceedings[,]" the Supreme Court has cautioned that "even a strong case for relief does not

10  mean the state court's contrary conclusion was unreasonable."  Id., citing Lockyer v. Andrade,

11  538 U.S. 63, 75 (2003).

12        The undersigned also finds that the same deference is paid to the factual determinations of

13  state courts.  Under § 2254(d)(2), factual findings of the state courts are presumed to be correct

14  subject only to a review of the record which demonstrates that the factual finding(s) "resulted in a

15  decision that was based on an unreasonable determination of the facts in light of the evidence

16  presented in the state court proceeding."  It makes no sense to interpret "unreasonable" in §

17  2254(d)(2) in a manner different from that same word as it appears in § 2254(d)(1) – i.e., the

18  factual error must be so apparent that "fairminded jurists" examining the same record could not

19  abide by the state court factual determination.  A petitioner must show clearly and convincingly

20  that the factual determination is unreasonable.  See Rice v. Collins, 546 U.S. 333, 338 (2006).

21        The habeas corpus petitioner bears the burden of demonstrating the objectively

22  unreasonable nature of the state court decision in light of controlling Supreme Court authority.

23  Woodford v. Viscotti, 537 U.S. 19 (2002).  Specifically, the petitioner "must show that the state

24  court's ruling on the claim being presented in federal court was so lacking in justification that

25  there was an error well understood and comprehended in existing law beyond any possibility for

26  fairminded disagreement."  Harrington, supra, 131 S. Ct. at 786-787.  Clearly established" law is

27  law that has been "squarely addressed" by the United States Supreme Court.  Wright v. Van

28  Patten, 552 U.S. 120, 125 (2008).  Thus, extrapolations of settled law to unique situations will not

5

1  qualify as clearly established.  See e.g., Carey v. Musladin, 549 U.S. 70, 76 (2006) (established

2  law not permitting state sponsored practices to inject bias into a criminal proceeding by

3  compelling a defendant to wear prison clothing or by unnecessary showing of uniformed guards

4  does not qualify as clearly established law when spectators' conduct is the alleged cause of bias

5  injection).  The established Supreme Court authority reviewed must be a pronouncement on

6  constitutional principles, or other controlling federal law, as opposed to a pronouncement of

7  statutes or rules binding only on federal courts.  Early v. Packer, 537 U.S. 3, 9 (2002).

8        The state courts need not have cited to federal authority, or even have indicated awareness

9  of federal authority in arriving at their decision.  Early, supra, 537 U.S. at 8.  Where the state

10 courts have not addressed the constitutional issue in dispute in any reasoned opinion, the federal

11 court will independently review the record in adjudication of that issue.  "Independent review of

12 the record is not de novo review of the constitutional issue, but rather, the only method by which

13 we can determine whether a silent state court decision is objectively unreasonable."  Himes v.

14 Thompson, 336 F.3d 848, 853 (9th Cir. 2003).

15       "When a state court rejects a federal claim without expressly addressing that claim, a

16 federal habeas court must presume that the federal claim was adjudicated on the merits – but that

17 presumption can in some limited circumstances be rebutted."  Johnson v. Williams, 133 S. Ct.

18 1088, 1096 (2013).  "When the evidence leads very clearly to the conclusion that a federal claim

19 was inadvertently overlooked in state court, § 2254(d) entitles the prisoner to" de novo review of

20 the claim.  Id. at 1097.

21 II.  Petitioner's Jury-Related Claims

22       Two of petitioner's claims concern jury deliberations, while the remaining three concern

23 his prior "strike" convictions.  The court first addresses the two claims regarding jury issues: (1)

24 the trial court erred in giving the deadlocked jury the "firecracker" instruction, and (2) the trial

25 court erred in suspending jury deliberations without cause.[2]

26 /////

27

28 _____
[2] These claims are listed in the petition as Grounds One and Three.  (Ptn. at 5, 8.)

6

The relevant facts have been summarized by the state court of appeal as follows:

> The first trial ended in a mistrial. The second trial began May 21, 2009. In addition to the 12–member jury, three alternates were selected. During the evidentiary portion of the trial, one alternate replaced a juror whose father had passed away.
>
> The jury began deliberations late in the day June 23, 2009. On June 30, Juror No. 11 left the court a message that she could not be present as her husband was ill. The court and counsel discussed replacing her with an alternate. Because deliberations would have to begin anew with an alternate, the court declared, "[W]e are doing our best to keep this panel constituted in its original form." During this discussion, the court noted other jurors would soon be unavailable due to prepaid vacations, school schedules, and, in one case, a scheduled medical procedure. The court sent the jury home, to return the next day.
>
> The jury resumed deliberations on July 1 and reported an impasse on one count. The jury had verdicts on two counts; the vote was 10 to 2 on the third. Over defense objection, the court gave the "firecracker" instruction.
>
> The next day, July 2, the jury sent the court a note requesting to continue deliberations beyond that day, starting on July 17. The jury stated it was not at an impasse and was still working on reaching a verdict, but it acknowledged the various scheduling conflicts the week of July 6 through 10 and July 13 through 17. The court announced it intended to take verdicts on the two counts and then have the jury return later for deliberations on the third count. The defense objected to that procedure, claiming it violated defendant's jury trial rights and due process. Counsel complained the People were trying to get a peek at what the jury was doing before deciding how to proceed. The defense wanted a mistrial on the third count, if verdicts were taken on the other two. The court determined "that it's in everyone's interest to go ahead and take the two verdicts."
>
> The jury returned verdicts of guilty on counts two and three, the two counts of felon in possession of a firearm.
>
> Under questioning by the court, the foreman of the jury confirmed the jury believed it could potentially reach a verdict with further deliberations. The court excused the jury until the afternoon of July 16, 2009. The court again admonished the jury not to discuss the case with anyone or visit the scene of the crime.
>
> The jury returned July 16 and reached a verdict on the final count. The jury found defendant not guilty of first degree murder, but guilty of second degree murder. It found the firearm enhancement true.

Jackson, 2011 WL 2811221, **2-3. This summary is consistent with this court's review of the record.

7

1   A. <u>Firecracker Instruction</u>

2   1. <u>Claim</u>

3         Petitioner claims that the trial court erred by giving the supplemental "firecracker"

4   instruction after the jury indicated that it had reached an impasse on one count.  The instruction

5   suggested that the jury use various means to attempt to reach a verdict.

6         While the instant petition only outlines petitioner's claims, the court liberally construes it

7   as an attempt to renew petitioner's arguments previously raised in the state courts.  <u>See</u> <u>Roy v.</u>

8   <u>Lampert</u>, 465 F.3d 964, 970 (9th Cir. 2006) (pro se habeas filings must be liberally construed).  In

9   his brief to the state court of appeal, petitioner argues that the firecracker instruction constituted a

10  "mini-<u>Allen</u> charge" that "carries a potentially coercive impact, and burdens rather than facilitates

11  the administration of justice[.]"  (Lod. Doc. 1 at 69, citing <u>People v. Gainer</u>, 19 Cal. 3d 835, 842-

12  843 (1977).)  He asserts that the firecracker instruction "had the inevitable effect, under the

13  totality of the circumstances, of putting pressure on this jury to reach a verdict" and "divorced

14  these jurors from the bedrock principle that each juror must decide the case for oneself."  (<u>Id.</u> at

15  71.)  By giving the instruction, petitioner argues, the trial court violated his right to trial by jury

16  under the Sixth Amendment and the right to due process of law under the Fourteenth

17  Amendment.  (<u>Id.</u> at 72.)

18        An "<u>Allen</u> charge" is

19              the generic name for a class of supplemental jury instructions given
                when jurors are apparently deadlocked; the name derives from the
20              first Supreme Court approval of such an instruction in <u>Allen v.</u>
                <u>United States</u>, 164 U.S. 492, 501–02 (1896).  In their mildest form,
21              these instructions carry reminders of the importance of securing a
                verdict and ask jurors to reconsider potentially unreasonable
22              positions.  In their stronger forms, these charges have been referred
                to as "dynamite charges," because of their ability to 'blast' a verdict
23              out of a deadlocked jury. The charge has also been called the 'third
                degree instruction,' 'the shotgun instruction,' and 'the nitroglycerin
24              charge.'

25

26  <u>United States v. Berger</u>, 473 F.3d 1080, 1089 (9th Cir. 2007) (citation omitted).  "The <u>Allen</u>

27  instruction is most often used in cases of 'apparent juror deadlock' to 'admonish jurors to keep

28  trying."  <u>Id.</u>; <u>see also</u> <u>Weaver v. Thompson</u>, 197 F.3d 359, 365 (9th Cir. 1999) ("In the archetypal

8

1    Allen charge context, the judge instructs a deadlocked jury to strive for a unanimous verdict.")

2            While adopting the factual summary as set forth by the court of appeal, the undersigned

3    sets forth the following additional relevant facts:

4            On June 23, 2009, the eighteenth day of petitioner's criminal trial, jury deliberations

5    began in the late afternoon.  The jury deliberated for the next three business days, requesting

6    transcripts and recorded materials on certain issues.  3 CT 858-866.

7            On July 1, 2009, the trial court received a communication from the jury stating: "We, the

8    jury in the above-entitled action, request the following: Jury is at an impass [sic] on one of the

9    counts.  Need further instructions."  3 CT 870.  The trial court brought the jury in "to get some

10   clarification of where they are in the deliberative process, and then proceed from there."  6 RT

11   1602.  When the jury was brought in, the trial court confirmed that it had reached verdicts on two

12   of the three counts.  The court did not inquire, and the jury did not indicate, which count was still

13   at issue.

14           THE COURT:  Without telling me numerically which way the jury
             is going, can you tell me what the numerical breakdown is?
15
             JUROR 2:  10-2.
16

17   6 RT 1604.  The court asked if the jury would like additional read-back or clarification of the jury

18   instructions; the jury declined both.  Id.  The trial court sent the jury out, and the prosecutor

19   requested that the court read the "firecracker" instruction.  6 RT 1605.  Petitioner's counsel

20   objected to the firecracker instruction.  The trial court overruled the objection, stating that

21   "[g]iven the fact that the numerical breakdown is 10-2, I'm not sure at this point I'm in a position

22   to determine the jury is hopelessly deadlocked.  So I think it would be appropriate, given the fact

23   that this is the first time we have had expression from the jury indicating . . . their inability to

24   reach a verdict on this count, . . . to continue their deliberations with some further guidance[.]"  6

25   RT 1605-1606.  The court gave the firecracker instruction and the jury resumed deliberations.  3

26   CT 871; 6 RT 1608-1612.

27   /////

28   /////

9

The trial court instructed the jury as follows:

> Ladies and gentlemen, what I am going to do at this time is give you additional instruction and then request that you continue your deliberations.

> Ladies and gentlemen, it has been my experience that on more than one occasion, a jury which initially reported it was unable to reach a verdict was ultimately able to arrive at verdicts on one or more of the counts before it.

> To assist you in your further deliberations, I'm going to further instruct you as follows:

> Your goal as jurors should be to reach a fair and impartial verdict if you are able to do so based solely on the evidence presented and without regard for the consequences of your verdict regardless of how long it takes to do so.

> It is your duty as jurors to carefully consider, weigh, and evaluate all the evidence presented at the trial, to discuss your views regarding the evidence, and to listen to and consider the views of your fellow jurors.

> In the course of your further deliberations, you should not hesitate to reexamine your own views or to request your fellow jurors to reexamine theirs. You should not hesitate to change a view you once held if you are convinced that it is wrong, or to suggest other jurors change their views if you are convinced they are wrong.

> Fair and effective jury deliberations require a frank and forthright exchange of views. As I previously instructed you, each of you must decide the case for yourself, and you should do so only after a full and complete consideration of all the evidence with your fellow jurors.

> It is your duty as jurors to deliberate, with the goal of arriving at a verdict on the charge if you can do so without violence to your individual judgment.

> Both the People and the defendant are entitled to the individual judgment of each juror.

> As I previously instructed you, you have the absolute discretion to conduct your deliberations in any way you deem appropriate.

> May I suggest that since you have not been able to arrive at a verdict on one of these counts using the methods that you have chosen, that you consider to change the methods that you have been following at least temporarily and try new methods.

> For example, you may wish to consider having different jurors lead the discussions for periods of time, or you may wish to experiment with reverse role-playing by having those on the one side of an issue present and argue the other side's position and vice versa. This

1    might enable you to better understand the other's position.

2    By suggesting that you should consider changes in your methods of
     deliberations, I want to stress I am not dictating or instructing you
3    as to how you—I'm not dictating or instructing you as to how to
     conduct your deliberations. I merely find that you may find it
4    productive to do whatever is necessary to ensure that each juror has
     a full and fair opportunity to express his or her views and to
5    consider and understand the views of the other jurors.

6    I also suggest you reread CALCRIM Instruction[ ] [Nos.] 200 and
     3550.
7
     That's the first and the last instruction in the series that you
8    received.

9    These instructions pertain to your duties as jurors and make
     recommendations on how you should deliberate.
10
     The integrity of a trial requires that jurors at all times during their
11   deliberations conduct themselves as required by the instructions.
     CALCRIM Instruction[ ] [Nos.] 200 and 3550 define the duties of a
12   jury.

13   The decision the jury renders must be based on the facts and the
     law. You must determine what the [sic] facts have been proved
14   from the evidence received in the trial, and not from any other
     source. A fact is something proved by the evidence or by
15   stipulation. Second, you must apply the law that I state to you to the
     facts as you determine them and in this way arrive at your verdict.
16
     You must accept and follow the law as I stated it to you, regardless
17   of whether you agree with the law.

18   If anything concerning the law said by the attorneys in their
     arguments or at any other time during trial conflicts with my
19   instructions on the law, you must follow my instructions.

20   CALCRIM [No.] 3550 defines the jury's duties to deliberate. The
     decisions you make in this case must be based on the evidence
21   received in this trial and the instructions given by this Court.

22   These are the matters this instruction requires you to discuss for the
     purpose of reaching a verdict.
23
     CALCRIM [No.] 3550 also recommends how the jurors should
24   approach their task. You should keep in mind the recommendations
     this   instruction   suggests   when   considering   the   additional
25   instructions, comments and suggestions that have been made in the
     instructions now presented to you.
26
     I hope my comments and suggestions may have some assistance to
27   you. You are ordered to continue your deliberations at this time.

28   /////

1
2
3

> If you have other questions, concerns, requests or any communication desired to report to me, please put those in writing on the appropriate form and submit that to my Bailiff, have it signed and dated by the foreperson, and then please notify the Bailiff."

4    6 RT 1608-1612.

5        The next day, July 2, 2009, the jury sent the trial court a note "requesting to deliberate

6    beyond today's date . . . [as] we are still working things [through.]"  (3 CT 873, 879.)  The trial

7    court took verdicts on the two firearm counts and dismissed the jury until July 16, 2009.  6  RT

8    1648-1655.   The jury reconvened that afternoon and reached a verdict on the third count, finding

9    petitioner not guilty of first degree murder, but guilty of second degree murder with a firearm

10   enhancement.  6 RT 1681-1682.

11   2.  State Court Decision

12       In the last reasoned decision on this claim, the state court of appeal wrote:

13
14
15

> Defendant contends the second degree murder conviction and the accompanying firearm enhancement must be reversed because it was error for the trial court to give the "firecracker" instruction approved by this court in People v. Moore (2002) 96 Cal. App. 4th 1105, 117 (Moore ).  FN6[3]

16
17

> The trial court gave this instruction, over defense objection, when the jury advised it was at an impasse on one count.  Defendant contends this instruction violated the principles set forth in People v. Gainer (1977) 19 Cal.3d 835 (Gainer).

18
19
20
21
22
23
24

> In Allen v. United States (1896) 164 U.S. 492, 501–502, the Supreme Court approved a charge, a so-called "dynamite" charge, that encouraged jurors holding the minority view to reexamine their views in light of the views expressed by those in the majority, noting that a jury should consider that the case must at some point be decided.   In Gainer, supra, 19 Cal.3d 835, our high court disapproved Allen in two respects. "We therefore hold it is error for a trial court to give an instruction which either (1) encourages jurors to consider the numerical division or preponderance of opinion of the jury in forming or reexamining their views on the issues before them; or (2) states or implies that if the jury fails to agree the case will necessarily be retried." (Id. at p. 852, fn. omitted.)

25
26
27

> Defendant argues Moore's "firecracker" instruction given by the trial court here violated Gainer because: (1) the instruction put pressure on the jury to reach a verdict even though the court did not tell the jury that the case must be decided at some point; and (2) the instruction divorced the jurors from the bedrock principle that each

28   [3] Text of firecracker instruction, set forth above.

juror must decide the case for himself or herself by suggesting the jurors experiment with reverse role playing.  Defendant faults the instruction for failing to remind jurors not to abandon their views simply to accede to the majority view or in the interest of judicial economy in getting the case decided.

In <u>Moore</u>, we concluded the same instruction as given here did not violate <u>Gainer</u>. (<u>Moore</u>, <u>supra</u>, 96 Cal.App.4th at pp. 1120–1121.) The instruction did not exert a coercive effect on jurors; rather, it "instructed that the 'goal as jurors should be to reach a fair and impartial verdict *if you are able to do so* based solely on the evidence presented and without regard to the consequences of your verdict [or] regardless of how long it takes to do so.' " (<u>Id.</u> at p. 1121, original italics.) The instruction "directed the jurors to consider carefully, weigh and evaluate all of the evidence presented at trial, to discuss their views, and to consider the views of their fellow jurors." (<u>Id.</u> at p. 1121.) We noted the instruction told the jurors it was their duty to deliberate with the goal of arriving at a verdict " '*if you can do so without violence to your individual judgment.*' " (<u>Ibid.</u>, original italics.) "[T]he jury was never directed that it was required to reach a verdict, nor were any constraints placed on any individual juror's responsibility to weigh and consider all the evidence presented at trial." (<u>Ibid.</u>)

The same <u>Moore</u> instruction was also upheld by the Sixth Appellate District in <u>People v. Whaley</u> (2007) 152 Cal.App.4th 968. <u>Whaley</u> specifically rejected the contentions defendant raises here regarding the use of role playing. (<u>Ibid.</u>) We agree with the majority in <u>Whaley</u> that the neutral suggestion of role playing did not violate <u>Gainer</u>. (<u>People v. Whaley</u>, <u>supra</u>, 152 Cal.App.4th at pp. 982–983.)

We reject defendant's claims and continue to approve of the <u>Moore</u> supplemental instruction. The trial court did not err in giving the supplemental "firecracker" instruction.

<u>Jackson</u>, 2011 WL 2811221, **5-6.

3. <u>Legal Standard</u>

In general, a challenge to jury instructions does not state a federal constitutional claim. <u>Engle v. Isaac</u>, 456 U.S. 107, 119  (1982); <u>Gutierrez v. Griggs</u>, 695 F.2d 1195, 1197 (9th Cir. 1983).  To warrant federal habeas relief, a challenge instruction cannot be "merely . . . undesirable, erroneous, or even 'universally condemned,'" but must violate some due process right guaranteed by the fourteenth amendment.  <u>Cupp v. Naughten</u>, 414 U.S. 141, 146 (1973). Even if there is an instructional error, a habeas petitioner is not entitled to relief unless the error "had substantial and injurious effect or influence in determining the jury's verdict."  <u>Brecht v. Abrahamson</u>, 507 U.S. 619, 637 (1993).

13

1    A trial judge's instruction to a jury to continue deliberations is impermissible only if the

2    jury was improperly coerced to relinquish their views in favor of reaching a unanimous decision,

3    thus infringing the defendant's right to due process. Lowenfield v. Phelps, 484 U.S. 231, 237–41,

4    (1988).  A reviewing court considers whether the court's actions and statements were coercive

5    under the totality of the circumstances.  Id. at 237.  The Ninth Circuit Court of Appeals has

6    identified several factors to assist a reviewing court in determining whether a supplemental jury

7    instruction of this kind violates due process: "(1) the form of the instruction, (2) the time the jury

8    deliberated after receiving the charge in relation to the total time of deliberation, and (3) any other

9    indicia of coerciveness."  U.S. v. Berger, 473 F.3d 1080, 1090 (9th Cir. 2007), citing United

10    States v. Steele, 293 F.3d 906, 911 (9th Cir. 2002).

11    4. Discussion

12    While the state court of appeal did not expressly address petitioner's federal

13    constitutional claims concerning the "firecracker" instruction, there is no evidence these claims

14    were "inadvertently overlooked."  See Johnson, 133 S. Ct. at 1096.  See also Bell v. Uribe, 2014

15    WL 211814, *6 (9th Cir. Jan. 21, 2014) ("[g]iven the overlapping nature of the petitioner's Sixth

16    Amendment and [state law] claim, it is improbable that the state court simply neglected the

17    federal issue and failed to adjudicate the constitutional issue."); People v. Gainer, 19 Cal. 3d 835,

18    846-848 (1977) (considering numerous federal decisions on Allen charge).  Thus AEDPA

19    deference applies, and the question is whether the state courts reasonably determined that the

20    instruction was not unconstitutionally coercive under the totality of the circumstances.

21    As to the first factor, the form of the instruction was not unduly coercive.  It instructed

22    that the jurors' goal should be to reach a fair and impartial verdict "regardless of how long it takes

23    to do so"; that "each of you must decide the case for yourself"; that the goal was to arrive at a

24    verdict "if you can do so without violence to your individual judgment"; that both parties were

25    "entitled to the individual judgment of each juror"; and that the court was not "dictating or

26    instructing" how to conduct deliberations, but merely suggesting that the jury "do whatever is

27    necessary to ensure that each juror has a full and fair opportunity to express his or her views and

28    to consider and understand the views of the other jurors."  Emphasizing jurors' duty to use their

14

1    individual judgment, the instruction did not suggest that minority-view jurors should accede to

2    the majority in order to reach a verdict.

3         As to the second factor, the instruction was given on the fifth full day of deliberations

4    (July 1), and the jury continued to deliberate for another day on the remaining count at issue (July

5    2).  On that day, the jury sent the trial court a note requesting to continue deliberations.  This

6    record is consistent with a jury that was conscientiously working as a body.  See Scott v.

7    McDonald, 2014 WL 1286007, *21 (E.D. Cal. March 31, 2014), citing Berger, 473 F.3d at 1093

8    (fact that jury was deliberating means that "the judge did not make his remarks in an atmosphere

9    where the jurors would have felt that unanimity was their only escape from the jury room.").

10        Following a recess, a verdict on the remaining count was reached on the next day of

11   deliberations (July 16).  The Ninth Circuit has found no coercion where the length of

12   deliberations between instruction and verdict was less than that in this case.  See e.g., United

13   States v. Bonam, 772 F.2d 1449, 1450–51 (9th Cir. 1985) (one-and-a-half hours); United States v.

14   Beattie, 613 F.2d 762 (9th Cir. 1980) (three-and-a-half hours); compare Weaver v. Thompson,

15   197 F.3d 359, 366 (9th Cir. 1999) (coercion found when jury returned with unanimous verdict

16   five minutes after receiving Allen charge).

17        As to the third factor, indicia of coerciveness, it is significant that, upon learning that the

18   jury was at an impasse, the trial court inquired into the numerical breakdown of the deadlock (10-

19   2).  In Brasfield v. U.S., 272 U.S. 448, 449 (1926), the United States Supreme Court held that a

20   federal court's inquiry into the numerical division of the jury was a procedure that "served no

21   useful purpose . . . [I]n general its tendency is coercive," and reversed defendant's conviction on

22   that basis.  See also Burton v. United States, 196 U.S. 283, 307 (1905) (stating that in federal

23   trials "a practice ought not to grow up of inquiring a jury, when brought into a court because

24   unable to agree, how the jury is divided").

25        However, as the Ninth Circuit has explained:

26        The Court did not hold in either Brasfield or Burton that the trial
          court's conduct violated the Sixth Amendment.    Rather, in
27        Brasfield, the Court prohibited jury polling under its inherent
          supervisory authority over the federal judiciary and not because of
28        any particular constitutional imperative.  See Lowenfeld, 484 U.S.

15

1
2
3
4
5

at 240, n.3 ("Our decision in <u>Brasfield</u> makes no mention of the Due Process Clause or any other constitutional provision. The Federal Courts of Appeals have uniformly rejected the notion that <u>Brasfield</u>'s per se reversal approach must be followed when reviewing state proceedings on habeas corpus.") Additionally, as we have held, the admonition against jury balloting in <u>Burton</u> was dicta and, given its relationship to <u>Brasfield</u>, was 'only supervisory in nature.' <u>Locks v. Sumner</u>, 703 F.2d 403, 406 (9th Cir. 1983).

6 <u>Bell v. Uribe</u>, --- F.3d ----, 2014 WL 211814, *9 (9th Cir. Jan. 21, 2014); <u>see also</u> <u>United States v.</u>

7 <u>Evanston</u>, 651 F.3d 1080, 1085, n.8 (9th Cir. 2011) (in <u>Brasfield</u>, Supreme Court proscribed

8 federal jury polling in pursuant to its "supervisory powers"). Thus the jury polling in this case is

9 not, itself, grounds for federal habeas relief.

10 Moreover, no other factors in the record suggest that the jury was impermissibly coerced

11 into reaching a verdict. The trial judge gave the "firecracker" instruction only once, and "did not

12 know the identity of the holdouts . . . ; there is thus no way that any of the holdout jurors could

13 have thought the judge was directing the instruction specifically at him." <u>United States v.</u>

14 <u>Ajiboye</u>, 961 F.2d 892, 894 (9th Cir. 1992).

15 Overall, having considered the totality of the circumstances, the undersigned concludes

16 that the state courts' determination that the "firecracker" instruction was not unconstitutionally

17 coercive was reasonable under AEDPA. Thus petitioner is not entitled to federal habeas relief on

18 this claim.

19 B.  <u>Suspension of Jury Deliberations</u>

20 1.  <u>Claim</u>

21 Petitioner next claims the trial court prejudiced him by suspending jury deliberations for

22 fourteen days without good cause. In his brief to the state court of appeal, he argues that the

23 suspension prejudiced him by allowing for "the prolonged exposure of the jurors to outside

24 influences, from the strong probability that their recollections of the evidence and the instructions

25 would fade or become confused, and the subversion of the pattern of orderly deliberation." (Lod.

26 Doc. 1 at 57-58.) He argues that he was therefore denied a fair trial and due process under the

27 Fifth, Sixth, and Fourteenth Amendments to the United States Constitution. (<u>Id.</u> at 66.)

28 /////

16

1    2. <u>State Court Decision</u>

2        In the last reasoned decision on this claim, the state court of appeal wrote:

3             Initially, the People contend defendant has forfeited this contention
by failing to object to the suspension of deliberations.  (<u>People v.
4       Bolden</u> (2002) 29 Cal.4th 515, 561–562, 127 Cal.Rptr.2d 802, 58
P.3d 931 [where defendant did not object to suspension of
5       deliberations, claim is not preserved for appellate review].)   The
People contend defendant objected only to taking the two verdicts,
6       not to the suspension of deliberations.

7             Defendant's objection was targeted primarily at taking verdicts on
the two counts on which the jury had reached a unanimous
8       decision, but he did object to the proposal "to take verdicts and
then, basically, excuse the jury, continue this case for potentially 19
9       days, 20 days, have them come back, and then start deliberating
again."   While defendant's objection to suspending deliberations
10      could have been clearer, we decline to resolve this issue by finding
forfeiture.
11

12            The trial court has discretion to suspend jury deliberations for a
period of time for good cause. (§§ 1050, 1121; <u>People v.
13      Santamaria</u> (1991) 229 Cal.App.3d 269, 276, 280 Cal. Rptr. 43
(<u>Santamaria</u>).) That discretion, however, is not unlimited, but must
14      be " 'grounded in reasoned judgment and guided by legal principles
and policies.' " (<u>Santamaria</u>, <u>supra</u>, 229 Cal.App.3d at p. 276, 280
15      Cal. Rptr. 43.)   In considering whether to suspend jury
deliberations, a court must be mindful of the explicit statutory right
16      of the People, the defendant, the victims, and the witnesses to an
"expeditious disposition" of a criminal case. (§ 1050, subd. (a).)

17            In <u>Santamaria</u>, there was an 11–day suspension of jury deliberations
due to the judge's absence. The reviewing court found no good
18      cause for the suspension. "The record in the present case discloses
no administrative duties, congested calendar, or any other
19      exceptional circumstances to explain the continuance; instead, the
record indicates only that the judge was to be 'away,' and that at
20      least two of the days involved were holidays. If there was any
established necessity for the delay, it is not apparent from this
21      record." (<u>Santamaria</u>, <u>supra</u>, 229 Cal.App.3d at p. 277, 280 Cal.
Rptr. 43.)
22

23            The court was also concerned with the timing of the suspension
because it occurred during deliberations. "A long adjournment of
24      deliberations risks prejudice to the defendant both from the
possibility that jurors might discuss the case with outsiders at this
25      critical point in the proceedings, and from the possibility that their
recollections of the evidence, the arguments, and the court's
26      instructions may become dulled or confused. [Citations.]"
(<u>Santamaria</u>, <u>supra</u>, 229 Cal.App.3d at pp. 277–278, 280. 43.)
27      Finally, the court noted there was an alternative to suspending
deliberations. A judge could have been substituted under the
28      provisions of section 1053. (<u>Santamaria</u>, <u>supra</u>, at p. 278, 280. 43.)

We find no abuse of discretion in suspending deliberations. Unlike in <u>Santamaria</u>, here there was good cause for suspending jury deliberations; the suspension was to accommodate the schedules of jurors who had vacations or school, and one who had a medical operation planned.  Indeed, the jury requested the recess. Thus, "the adjournment was for the convenience of the jurors, not for the judge's personal convenience...." (<u>People v. Bolden</u>, <u>supra</u>, 29 Cal.4th at p. 562, 127 Cal.Rptr.2d 802, 58 P.3d 931.)   As <u>Santamaria</u> recognized, adjournments for "weekends, holidays, sick jurors, or other imperative factors" are usually "clearly within the acceptable range of a trial court's discretion." (<u>Santamaria</u>, <u>supra</u>, 229 Cal.App.3d at p. 281, 280. 43.)

Defendant contends the court had alternatives available to suspending deliberations. He faults the trial court for failing to inquire whether the jurors who had scheduling conflicts (vacation, school, and a medical operation) could nonetheless have continued to deliberate by changing their plans. We note defendant did not request such further inquiry at trial and it is sheer speculation that any of the jurors would have indicated he or she could continue without financial hardship. FN4 There were three jurors with scheduling conflicts and only two alternates left.  Another juror had a scheduling conflict in the future, which might have become a factor if the jury had to begin deliberations anew.  Further, the entire jury understood these three jurors were unable to deliberate for a period of time and raised the issue on its own, indicating the other jurors' willingness to be accommodating.  This acceptance that these jurors were truly unavailable supports our conclusion that the trial court did not abuse its discretion in suspending deliberations to accommodate them.

FN4. Trial counsel's failure to propose questioning jurors further may have been a sound tactical decision. "Tactically, there would be no reason why a defendant would necessarily want to force the jury to continue to deliberate without ceasing, against a Christmas holiday deadline; this could lead to a very quick and unfavorable verdict, if the jurors had travel plans or other obligations for the holidays." (<u>People v. Johnson</u> (1993) 19 Cal.App.4th 778, 792, 23 Cal.Rptr.2d 703.)   This reasoning applies with equal force to vacations and other scheduled events.

Although the recess occurred during a sensitive time, during deliberations, defendant has not shown any prejudice from the good cause delay. FN5 After reconstituting, the jury acquitted on first degree murder and convicted defendant of second degree murder. This verdict shows a careful consideration of the charges and the evidence instead of merely a quick verdict. "His claim that the jury's [murder] verdict, returned on the same date court proceedings were reconvened, was the direct and prejudicial result of the recess, is none other than speculation." (<u>People v. Gutierrez</u> (2002) 28 Cal.4th 1083, 1162, 124 Cal.Rptr.2d 373, 52 P.3d 572.)

FN5. In <u>Santamaria</u>, the court noted the difficulty in proving the adjournment affected the jurors' ability to recall the facts and instructions or that a juror engaged in a discussion of the case.

18

1
2
3

> (Santamaria, supra, 229 Cal.App.3d at p. 282, 280. 43.)  It found an
> extreme variance from established trial procedure, without
> established necessity, exceeds the limits of due process and is not
> harmless. (Id. at p. 283, 280. 43.)  The analysis here is different
> because we have found the adjournment was for good cause.

4   Jackson, 2011 WL 2811221, **2-5.

5   3. Legal Standard

6         State criminal defendants have a federal constitutional right to a fair and impartial jury.

7   Duncan v. Louisiana, 391 U.S. 145, 149 (1968).  A defendant's Sixth Amendment right to a fair

8   trial is violated when the "essential feature" of the jury is not preserved.  Williams v. Florida, 399

9   U.S. 78, 100 (1970).   The Constitution "does not require a new trial every time a juror has been

10  placed in a potentially compromising situation . . . [because] it is virtually impossible to shield

11  jurors from every contact or influence that might theoretically affect their vote."  Rushen v.

12  Spain, 464 U.S. 114, 118 (1983), citing Smith v. Phillips, 455 U.S. 209, 217 (1982).

13        In Brecht v. Abrahamson, 507 U.S. 619  (1993), the U.S. Supreme Court substantially

14  restricted state prisoners' access to federal habeas relief by requiring a showing that the violation

15  of a federally guaranteed right had a "substantial and injurious effect or influence in determining

16  the jury's verdict."  In order for an error to have a "substantial and injurious effect or influence,"

17  it must have "affected the verdict."  O'Neal v. McAnnich, 513 U.S. 432 (1995).

18  4. Discussion

19        Applying the presumption that the state court did not overlook petitioner's federal claims

20  when considering his related state claims, Johnson, 133 S. Ct. at 1096, the court considers

21  whether its determination was reasonable under AEDPA.

22        Petitioner has not cited, and the court is not aware, of any decision by the United States

23  Supreme Court holding that the suspension of jury deliberations for a particular length of time is

24  violative of a criminal defendant's constitutional rights.  If, as here, no Supreme Court precedent

25  creates clearly established federal law relating to the legal issues the habeas petitioner raises in

26  state court, the state court's decision cannot be contrary to or an unreasonable application of

27  clearly established federal law.  Brewer v. Hall, 378 F.3d 952, 955 (9th Cir. 2004).  Moreover,

28  petitioner cites no evidence that any juror failed to fulfill his or her duty to be impartial or that

19

1   this was somehow attributable to the suspension of deliberations.

2        Finally, petitioner has not shown that any alleged constitutional error in this regard had a

3   "substantial and injurious effect" on the jury's verdict.  See Hamilton v. Vasquez, 17 F.3d 1149,

4   1159 (9th Cir. 1994) (petitioner not entitled to habeas relief where jury was adjourned for

5   eighteen days during deliberations, "the court . . . had a legitimate reason to adjourn the trial," and

6   petitioner did not show that adjournment rendered his trial unfair), overruled on other grounds as

7   recognized in Coleman v. Calderon, 210 F.3d 1047 (9th Cir. 2000).  For these reasons, petitioner

8   is not entitled to federal habeas relief on this claim.

9   III.  Petitioner's Prior Strike Claims

10       After the jury reached a verdict finding petitioner guilty of second degree murder, the trial

11  court directed them to determine whether petitioner had sustained three prior convictions as

12  alleged: a 2001 conviction for robbery in California, and 1998 and 1996 convictions for robbery

13  in the state of Washington.  6 RT 1684-1685.  The exhibits offered by the prosecutor to prove the

14  prior strikes included a "rap sheet" generated by the CLETS system used by police and a "969(b)

15  packet" comprised of copies of various documents on file at the prison.  6 RT 1688-1691.  As to

16  the 1996 Washington conviction, the prosecutor also offered an information listing the crime of

17  robbery and accompanied by a probable cause statement; a 1996 plea form, a plea agreement, a

18  judgment and sentence pursuant to the agreement.  As to the 1998 Washington conviction, the

19  prosecutor similarly offered an information with probable cause statement, plea documents, a

20  sentencing report, and prison records.  6 RT 1688-1690.

21       After the jury returned verdicts finding true the allegations that petitioner had sustained all

22  three prior convictions (6 RT 1696-1697), the trial court received briefing on whether they

23  constituted "strikes" under California's Three Strikes Law.

24       In California, theft requires an intent to permanently deprive another of property.  In

25  contrast, robbery under Washington law requires only an intent to temporarily deprive another of

26  property.  Lod. Doc. 1 at 78, citing People v. Avery, 27 Cal. 4th 49, 52 (2002); State v. Komok,

27  113 Wn. 2d 113 (1989).  As to the Washington prior convictions, the trial court concluded:

28       With respect to Prior Convictions Two and Three, I do recognize

20

1
2
3

that the statute in California is distinct from the statute in Washington in that the intent requirement in the State of Washington is less than that [sic] is required in the State of California for purposes of a robbery.

4
5
6

However, based upon . . . this Court's review of the record of conviction as to both of those, I do find that the offenses committed by the defendant of which he was convicted [in 1996 and 1998], do constitute prior convictions within the meaning of Penal Code Section 667(a) and (b) through (i).

7
8

I do find that the record of conviction does establish by proof beyond a reasonable doubt that the defendant did, in fact, have the intent to permanently deprive the victims in both of those cases.

9

Accordingly, the Court does find the convictions to be true within the meaning of those respective Penal Code sections.

10

11   6 RT 1714.

12   In his remaining claims, petitioner argues that all three prior convictions were improperly

13   adjudicated in violation of his federal constitutional rights.  He asserts that the strike convictions

14   violated his Sixth Amendment right to confrontation, were not supported by sufficient evidence in

15   violation of due process, and constituted double jeopardy.[4]  The court addresses these claims in

16   turn, below.

17   A.  Confrontation Clause

18   1.  Claim

19   Petitioner asserts that he was denied his Sixth Amendment right to confrontation when the

20   trial court admitted the CLETS printout and 969b packet to prove his 2001 conviction for robbery

21   in California, as these materials were testimonial hearsay.  He further asserts that, under the Sixth

22   Amendment, he was entitled to a jury trial on whether his prior convictions constituted strikes.

23   (Ptn. at 7; Lod. Doc. 1 at 77-89.)

24   2.  State Court Decision

25   In the last reasoned decision on this claim, the state court of appeal wrote:

26
27

*The Jury was not Required to Determine if Defendant's Priors were Serious Felonies*

28   [4] These claims are listed in the petition as Grounds Two and Four.  (Ptn. at 7, 10.)

21

Defendant was charged with three strike priors.  Two of them arose from robbery convictions in the State of Washington.  Because robbery in Washington does not contain the same elements as robbery in California, the trial court determined these two priors qualified as prior convictions under section 667, subdivisions (a) and (b) through (i).  Defendant contends this finding by the court violated his constitutional right to a jury determination of whether his prior conduct constituted a strike.

As defendant recognizes, in <u>People v. McGee</u> (2006) 38 Cal.4th 682, 709, 42 Cal.Rptr.3d 899, 133 P.3d 1054, the California Supreme Court held a defendant was not entitled to have a jury decide whether his out-of-state prior conviction qualified as a strike under California law.  As defendant also recognizes, we are bound to follow <u>McGee</u>. (<u>Auto Equity Sales, Inc. v. Superior Court</u> (1962) 57 Cal.2d 450, 455, 20 Cal. Rptr. 321, 369 P.2d 937.)

IV

*Consideration of Documentary Evidence of Defendant's Priors did not Violate the Confrontation Clause*

To prove the truth of a prior conviction, the trier of fact may look to the entire record of conviction.  (<u>People v. Guerrero</u> (1988) 44 Cal.3d 343, 355, 243 Cal. Rptr. 688, 748 P.2d 1150.) To prove defendant's California robbery conviction, the People offered a section 969b packet and a California Law Enforcement Communications System (CLETS) database printout.  Defendant contends the use of these documents violated his confrontation rights because these documents were testimonial hearsay.  In a supplemental brief, defendant applies this contention to the documents—informations, probable cause statements, plea forms and prison packet—used to prove his Washington priors as well.

In <u>Crawford v. Washington</u> (2004) 541 U.S. 36, 53–54 [158 L.Ed.2d 177, 194], the United States Supreme Court held that the confrontation clause bars "admission of testimonial statements of a witness who did not appear at trial unless he was unavailable to testify, and the defendant had had a prior opportunity for cross-examination."

In <u>People v. Taulton</u> (2005) 129 Cal.App.4th 1218, 1221, 29 Cal.Rptr.3d 203, the court held that "records of prior convictions are not 'testimonial' " and thus not subject to <u>Crawford</u>'s confrontation requirements.  "<u>Crawford</u> supports a conclusion that the test for determining whether a statement is 'testimonial' is not whether its use in a potential trial is foreseeable, but whether it was obtained for the purpose of potentially using it in a criminal trial or determining if a criminal charge should issue." (<u>People v. Taulton</u>, <u>supra</u>, at p. 1224, 29 Cal.Rptr.3d 203.)  The court found <u>Crawford</u>'s mention that business records were not "testimonial" was "enlightening." (<u>Ibid.</u>)  It concluded prior conviction records under section 969b "are prepared to document acts and events relating to convictions and imprisonments.  Although they may ultimately be used in criminal proceedings, as the documents were here, they are

not prepared for the purpose of providing evidence in criminal trials or for determining whether criminal charges should issue. Therefore, these records are beyond the scope of Crawford ...." (People v. Taulton, supra, at p. 1225, 29 Cal.Rptr.3d 203.)

In People v. Morris (2008) 166 Cal.App.4th 363, 83 Cal.Rptr.3d 253, the defendant challenged the admission of a certified CLETS rap sheet to prove his alleged prison priors. The court agreed with Taulton that CLETS rap sheets were not testimonial hearsay and their admission did not violate defendant's confrontation rights under Crawford. (Id. at p. 373, 83 Cal.Rptr.3d 253.)

Defendant contends Taulton and Morris do not survive Melendez–Diaz v. Massachusetts (2009) 557 U.S. —— [174 L.Ed.2d 314] (Melendez–Diaz ). There, the Supreme Court found three "certificates of analysis" showing the results of forensic analysis performed on seized cocaine fell within the "core class of testimonial statements" and their admission violated Crawford. (Id. at p. —— [ —— U.S. at ——, 129 S. Ct. at p. ——174 L.Ed.2d at p. 321].) Defendant contends the 969b packet is testimonial under Melendez–Diaz.

In Melendez–Diaz, the Supreme Court discussed clerk's certificates authenticating official records as the one class of evidence that has traditionally been admissible even though it was prepared for use at trial. The Supreme Court emphasized that the clerk's authority in this area is extremely narrow: the clerk may certify only the correctness of a copy of a record kept by the office, not to provide an interpretation of a record's content, substance, or effect. (Melendez–Diaz, supra, 557 U.S. at p. ——, —— S. Ct. at p. – – – – [174 L.Ed.2d at p. 328].) "A clerk could by affidavit authenticate or provide a copy of an other-wise admissible record, but could not do what the analysts did here: create a record for the sole purpose of providing evidence against a defendant." (Id. at p. —— [—— U.S. at p. ——, 129 S. Ct. at p. ——174 L.Ed.2d at p. 329], original italics.)

We find the section 969b packet is analogous to the clerk's certificate, not the forensic analysis concluding the substance the defendant possessed was cocaine. The analyst from the Department of Corrections and Rehabilitation who created the priors packet did not create any records for the sole purpose of providing evidence against defendant; she compiled a group of documents, and then authenticated the group of records. This is exactly what the Supreme Court described as the limited certifying role of a clerk. The individual documents, such as the chronological history, the abstract of judgment and defendant's fingerprints, were not created for this prosecution. The same analysis applies to the CLETS printout. The system was established to serve the needs of all law enforcement. (Gov. Code, § 15151.)

In short, and unlike Melendez–Diaz, the documents at issue here, section 969b packets and rap sheets, are nothing more than compilations of preexisting records and documents related to defendant's prior convictions. They are not memorializations of

23

investigations newly undertaken in connection with this case. Admission of the section 969b packet and the CLETS printout did not violate defendant's confrontation rights.

In his supplemental brief, defendant makes no additional argument why the documents admitted to prove his State of Washington priors are testimonial. For the 1996 prior, these documents were certified copies of the information, probable cause certificate, plea form and transcript of guilty plea. For the 1998 prior, they were certified copies of the information, declaration for determination of probable cause, statement of defendant on plea of guilty, the amended information with the prosecutor's statement, the warrant of commitment, the minute order and transcript of judgment and sentencing. The supplemental brief does not explain why these documents are testimonial hearsay.

In a subsequent argument challenging the sufficiency of the evidence (see part V, post ), however, defendant contends the probable cause statements are testimonial hearsay based on police reports. Defendant's briefing of the challenge to the probable cause statements as hearsay is contrary to the rules of appellate practice. An appellate brief must "[s]tate each point under a separate heading or subheading summarizing the point...." (Cal. Rules of Court, rule 8.204(a)(1)(B).) Defendant's headings give no notice that defendant is challenging the probable cause statements as testimonial hearsay and the failure to head an argument properly as required by the Rules of Court may forfeit the claim. (Loranger v. Jones (2010) 184 Cal.App.4th 847, 858, fn. 9, 109 Cal.Rptr.3d 120; Opdyk v. California Horse Racing Bd. (1995) 34 Cal.App.4th 1826, 1830–1831, fn. 4, 41 Cal.Rptr.2d 263.) The People, however, concede that the probable cause statements are hearsay. We accept the concession that the probable cause certificates should not be used to determine whether defendant's State of Washington priors are strikes. Whatever the merit of this point, which we need not decide, we will address defendant's contentions without considering the probable cause statements.

The remaining documents from the State of Washington were certified court documents, created for another purpose. Like the section 969b packet, the admission of this compilation does not violate defendant's confrontation rights.

Jackson, 2011 WL 2811221, **6-8.

3. Legal Standards

a. Testimonial Hearsay

The Confrontation Clause of the Sixth Amendment requires that a criminal defendant be afforded the right to confront and cross-examine witnesses against him. See Pointer v. Texas, 380 U.S. 400, 403 (1965). The Confrontation Clause applies to all out-of-court testimonial statements offered for the truth of the matter asserted, i.e., "testimonial hearsay." See Crawford

24

1   v. Washington, 541 U.S. 36, 51 (2004).  While the Confrontation Clause bans the admission of

2   "testimonial hearsay" at trial, it does not apply to nontestimonial hearsay.  Davis v. Washington,

3   547 U.S. 813, 821 (2006) ("It is the testimonial character of the statement that separates it from

4   other hearsay that, while subject to traditional limitations upon hearsay evidence, is not subject to

5   the Confrontation Clause.").  The Supreme Court in Crawford singled out business records as an

6   example of non-testimonial hearsay.  Id. at 541 U.S. at 56.  Compare Melendez-Diaz v.

7   Massachusetts, 557 U.S. 305(2009) (holding that "certificates of analysis" stating that a tested

8   substance was cocaine were testimonial and could not be admitted without cross-examination of

9   the document's author).

10        Moreover, the Ninth Circuit has held that Crawford applies only to trial testimony and

11   does not apply at sentencing.  U.S. v. Littlesun, 444 F.3d 1196, 1199 (9th Cir. 2006).  Under

12   Supreme Court precedent, the Ninth Circuit explained, "the law on hearsay at sentencing is still

13   what it was before Crawford: hearsay is admissible at sentencing, so long as it is accompanied by

14   some minimum indicia of reliability."  Id. at 1200 (internal quotations and citations omitted).

15   Prior convictions or "strikes" are sentencing factors.  See Almendarez–Torres v. United States,

16   523 U.S. 224, 243-44.

17   b.  Right to Jury Trial

18        In Apprendi v. New Jersey, 530 U.S. 466, 490 (2000), the Supreme Court held that,

19   except for the fact of a prior conviction, any facts that increase a defendant's sentence beyond the

20   statutory maximum must be proved to a jury beyond a reasonable doubt.  A judge may find "the

21   fact of a prior conviction."  See Almendarez–Torres, 523 U.S. at 247.  Courts may reasonably

22   disagree about some of the precise boundaries of the "prior conviction" exception.  Wilson v.

23   Knowles, 638 F.3d 1213, 1215 (9th Cir. 2011); see Kessee v. Mendoza–Powers, 574 F.3d 675,

24   677 (9th Cir. 2009) ( "[T]he task of determining the precise contours of the exception has been

25   left to the federal appellate courts.").

26        The Ninth Circuit has narrowly construed the prior conviction exception to apply "only to

27   facts directly reflected in the documents of conviction, not to secondary facts that are derived or

28   inferred from a prior conviction or from the conviction documents."  Butler v. Curry, 528 F.3d

25

1    624, 645 (9th Cir. 2008) (internal quotation marks and citations omitted).  While the Ninth Circuit

2    has not provided an exhaustive list of "conviction documents" for this purpose, it has held that

3    courts may consider the "charging document, written plea agreement, transcript of the plea

4    colloquy, and any explicit factual finding by the trial judge to which the defendant assented."

5    United States v. Strickland, 601 F.3d 963, 968 (9th Cir. 2010).  "This list, however, is illustrative

6    and other documents of equal reliability may also be considered."  Id.

7         Moreover, while the Ninth Circuit narrowly interprets the "prior conviction" exception,

8    other circuits read the exception more broadly.  See, e.g., United States v. Santiago, 268 F.3d 151,

9    156 (2d Cir. 2001) (Sotomayor, J.) ("In short, we read Apprendi as leaving to the judge . . . the

10   task of finding not only the mere fact of previous convictions but other related issues as well.

11   Judges frequently must make factual determinations for sentencing, so it is hardly anomalous to

12   require that they also determine the 'who, what, when, and where' of a prior conviction.").

13   4.  Discussion

14   a.  Testimonial Hearsay

15        As to his California strike, petitioner argues that the CLETS report and 969b packet were

16   testimonial hearsay that should not have been admitted to prove the strike.  However, the state

17   court reasonably concluded that these "compilations of preexisting records and documents" were

18   non-testimonial, as they had not been created for use at trial and were akin to business records.

19   Moreover, under circuit precedent interpreting Crawford, hearsay is admissible to prove prior

20   strikes for sentencing purposes, so long as the hearsay is accompanied by some minimum indicia

21   of reliability.  Here, the state courts reasonably found that the petitioner's rap sheet and 969b

22   packet were sufficiently reliable to be admissible at sentencing.  As the state court's

23   determination was not factually unreasonable or contrary to clearly established federal law under

24   AEDPA, petitioner is not entitled to habeas relief on this basis.

25   b.  Right to Jury Trial

26        Petitioner argues that the Apprendi line of cases required a jury, not the trial judge, to

27   determine whether his prior convictions were serious felonies under California's Three Strikes

28   Law.  Specifically, as to the Washington convictions, petitioner argues that the trial court

26

1 oversteppped its bounds by finding that petitioner had the intent to permanently deprive the victims

2 of property, such that the Washington convictions were equivalent to robbery convictions under

3 California law.

4     As set forth above, the trial court based this finding on the "record of conviction" in both

5 cases.  These included the charging documents, plea documents, judgment and sentencing reports,

6 and prison records.  By relying on these conviction-related documents and making reasonable

7 factual determinations about petitioner's past crimes based on their contents, the trial judge was

8 operating within the scope of the "prior conviction" exception to Apprendi.  As the state court's

9 conclusion to this effect was not contrary to or an unreasonable interpretation of clearly

10 established federal law, petitioner is not entitled to habeas relief on this basis.

11 B.  Insufficient Evidence

12 1.  Claim

13     Petitioner asserts that the evidence was insufficient to prove beyond a reasonable doubt

14 that the Washington robbery convictions constituted serious felonies under California law.

15 Petitioner argues that the evidence did not establish the requisite intent for robbery in California.

16 2.  State Court Decision

17     In the last reasoned decision on this claim, the state court of appeal wrote:

18
19
> *There is Sufficient Evidence the State of Washington Robberies are Serious Felonies*

20
21
22
> Defendant contends there is insufficient evidence that the State of Washington robbery priors qualified as strikes under California law. He contends that the law of robbery in California, unlike in Washington, requires an intent to permanently deprive the victim of the property and there is no basis from which a trier of fact could infer the requisite intent for the State of Washington priors.

23
24
25
26
27
28
> To qualify as a strike, a conviction in another jurisdiction must meet all of the elements of the California felony that qualifies as a strike. (See § 1170.12, subd. (b)(2), see also § 667.5, subd. (f) .) When deciding whether an out-of-state prior is a serious felony, "the trier of fact may consider the entire record of the proceedings leading to imposition of judgment on the prior conviction to determine whether the offense of which the defendant was previously convicted involved conduct which satisfies all the elements of the comparable California serious felony offense." (People v. Myers (1993) 5 Cal.4th 1193, 1195, 22 Cal.Rptr.2d 911, 858 P.2d 301; People v. Riel (2000) 22 Cal.4th 1153, 1204, 96

Cal.Rptr.2d 1, 998 P.2d 969 (Riel ).)  The record need only contain evidence from which the trier of fact can reasonably presume the existence of the required elements.  (See Riel, supra, 22 Cal.4th at p. 1205, 96 Cal.Rptr.2d 1, 998 P.2d 969; People v. Johnson (1989) 208 Cal.App.3d 19, 24, 256 Cal. Rptr. 16.)  When the record does not disclose the facts of the offense actually committed, courts presume the prior conviction was for the least offense punishable under the law of the convicting state.  (People v. Mumm (2002) 98 Cal.App.4th 812, 815–816, 120 Cal.Rptr.2d 18.)

The records of conviction of defendant's 1996 and 1998 convictions in the State of Washington for robbery (without considering the statements of probable cause, as discussed ante), show that in both cases defendant took, or participated in the taking of, money from someone by force. The plea form for the 1996 conviction stated, "I participated in taking money off Donny Stover by force...."  In the transcript of the plea, defendant admitted that he or someone he was with took money or something else that belonged to Stover and he did not think he had permission to do so. The plea form for the 1998 conviction stated, "I am sorry. I took some money forcibly from L. Sharpley without her consent on 12/3/97 in Pierce County. I apologize to her." Defendant told the court the words on the plea form were as if his own.

"'Robbery is the taking of "personal property in the possession of another against the will and from the person or immediate presence of that person accomplished by means of force or fear and with the specific intent permanently to deprive such person of such property." ' [Citation.]" ( People v. Davis (2009) 46 Cal.4th 539, 608, 94 Cal.Rptr.3d 322, 208 P.3d 78.)  The intent to deprive permanently is satisfied by the intent to deprive temporarily but for an unreasonable time so as to deprive the person of a major portion of the value or enjoyment.  (People v. Avery (2002) 27 Cal.4th 49, 58, 115 Cal.Rptr.2d 403, 38 P.3d 1.)  The State of Washington required the same intent to deprive permanently up until the decision in State v. Komak (1989) 113 Wash.2d 810, 816–817 [783 P.2d 1061, 1064]. (See Riel, supra, 22 Cal.4th at p. 1206, 96 Cal.Rptr.2d 1, 998 P.2d 969.)  Thus, we must determine whether the record of conviction for each State of Washington prior permits the inference of an intent to deprive permanently.

"[T]he intent required for robbery ... is seldom established with direct evidence but instead is usually inferred from all the facts and circumstances surrounding the crime. [Citations.]" ( People v. Lewis (2001) 25 Cal.4th 610, 643, 106 Cal.Rptr.2d 629, 22 P.3d 392.) "[A]n intent to permanently deprive someone of his or her property may be inferred when one unlawfully takes the property of another. [Citations.]" (People v. Morales (1993) 19 Cal.App.4th 1383, 1391, 24 Cal.Rptr.2d 847.)

The records of conviction are sufficient to show that defendant's State of Washington convictions for robbery qualify as strikes because his crime would constitute robbery in California. A trier of fact may reasonably infer that one who forcibly takes money from another does so with an intent to permanently deprive the owner of

the money. "It may reasonably be inferred that at the time defendant demanded and received the wallet it was his intention to deprive the owner of it permanently. [Citation.]" (<u>People v. Carroll</u> (1970) 1 Cal.3d 581, 584, 83 Cal. Rptr. 176, 463 P.2d 400.) Money, unlike, for example, a car, is not something that can be used temporarily and then returned to the owner; money can be used but once. One normally takes money in order to spend it and defendant did not believe the money was his. He admitted he did not have permission to take Stover's money and he apologized to Sharpley.

Sufficient evidence supports the trial court's findings that defendant's State of Washington robbery convictions qualified as strikes.

<u>Jackson</u>, 2011 WL 2811221, **8-10.

3. <u>Legal Standard</u>

The Due Process Clause of the Fourteenth Amendment "protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." <u>In re Winship</u>, 397 U.S. 358, 364 (1970). There is sufficient evidence to support a conviction if, "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." <u>Jackson v. Virginia</u>, 443 U.S. 307, 319 (1979). The court must review the entire record when the sufficiency of the evidence is challenged in habeas proceedings. <u>Adamson v. Ricketts</u>, 758 F.2d 441, 448 n. 11 (9th Cir. 1985). If the trier of fact could draw conflicting inferences from the evidence, the court in its review will assign the inference that favors conviction. <u>McMillan v. Gomez</u>, 19 F.3d 465, 469 (9th Cir. 1994).

"A petitioner for a federal writ of habeas corpus faces a heavy burden when challenging the sufficiency of the evidence used to obtain a state conviction on federal due process grounds." <u>Juan H. v. Allen</u>, 408 F.3d 1262, 1274 (9th Cir. 2005). In order to grant the writ, the federal habeas court must find that the decision of the state court reflected an objectively unreasonable application of <u>Jackson</u> and <u>Winship</u> to the facts of the case. <u>Id.</u> at 1275 & n. 13.

4. <u>Discussion</u>

On federal habeas review, the court applies the <u>Jackson</u> standard "with explicit reference to the substantive elements of the criminal offense as defined by state law." <u>Davis v. Woodford</u>,

1    384 F.3d 628, 639 (9th Cir. 2004), citing Jackson, supra, at 324 n. 16.  Here, the state court set

2    forth the substantive elements of robbery under California law, including a requirement of

3    "specific intent" to deprive the victim of the property taken by force or fear.

4           Petitioner argues that the record of conviction for the 1996 offense establishes only that

5    petitioner took money from his victim, Donald Stover, without Stover's consent, not that he

6    intended to "permanently deprive" Stover of the money.[5]  Petitioner makes the same argument

7    with respect to the 1998 offense, in which he admitted to forcibly taking money from the victim,

8    L. Sharpley, but did not explicitly state his intent to "permanently deprive" her of it.[6]  However,

9    the state court reasonably concluded that the record facts in both cases established the "intent"

10   element of robbery under California law, as "taking money by force" off a person suggests an

11   intent to deprive the victim of the money permanently.  Viewing the facts in the light most

12   favorable to the prosecution, a trier of fact could have found beyond a reasonable doubt that

13   petitioner had the requisite intent for robbery under California law as evidenced by the records of

14   the 1996 and 1998 convictions.  As the state court's analysis was not an objectively unreasonable

15   application of Jackson or Winship, petitioner is not entitled to habeas relief on this basis.

16   C.  Double Jeopardy

17   1.  Claim

18          Lastly, petitioner claims that the trial court's determination of facts outside the record of

19   conviction (i.e., the finding of specific intent as to petitioner's prior strikes) violated his rights

20   under the Double Jeopardy clause of the Fifth Amendment.

21   2.  State Court Decision

22          In the last reasoned decision on this claim, the state court of appeal wrote:

23                 In a confusing argument, defendant contends that using his
                   statements in the plea agreements to find he had an intent to
24                 permanently deprive his victims of their property violates double

25   [5] Summarizing his offense in the plea form, petitioner stated: "On May 16, 1996, I participated in
     taking money off Don Stover by force in Bremerton."  6 RT 1689.
26

27   [6] Summarizing his offense in the plea form, petitioner stated:  "I'm sorry I took some money
     forcibly from L. Sharpley . . . without her consent on December 3, '97 in Pierce County.  I
28   apologize to her."  6 RT 1690.

jeopardy.   Defendant contends that in determining if a prior conviction is a strike, the trier of fact is limited to those facts specifically found true by the jury or admitted by defendant.

In support of this double jeopardy argument, defendant relies on a line of United States Supreme Court cases: Jones v. United States (1999) 526 U.S. 227; Apprendi v. New Jersey (2000) 530 U.S. 466; Blakely v. Washington (2004) 542 U.S. 296; and Shepard v. United States (2005) 544 U.S. 13.  The problem with this reliance is that these cases do not address double jeopardy; instead, they involve questions of due process and the right to a jury trial.

In Shepard v. United States, supra, 544 U.S. at page 26, the court held: "We hold that enquiry under the [Armed Career Criminal Act] to determine whether a plea of guilty to burglary defined by a nongeneric statute necessarily admitted elements of the generic offense is limited to the terms of the charging document, the terms of a plea agreement or transcript of colloquy between judge and defendant in which the factual basis for the plea was confirmed by the defendant, or to some comparable judicial record of this information." Here the trial court used the same type of documents, especially the plea agreement and the colloquy between the court and the defendant, to determine if the State of Washington priors qualified as strikes. The trial court, therefore, followed a procedure sanctioned by the United States Supreme Court.

In People v. Guerrero, supra, 44 Cal.3d 343, 243 Cal. Rptr. 688, 748 P.2d 1150, the California Supreme Court determined what documents could be used to determine if a prior conviction was a serious felony.  The court reviewed the decision in People v. Alfaro (1986) 42 Cal.3d 627, 230 Cal. Rptr. 129, 724 P.2d 1154, which held proof that a prior conviction was a serious felony was limited to matters necessarily established by the prior judgment of conviction.   The Guerrero court overruled Alfaro and instead adopted the rule that in determining the truth of a prior-conviction allegation, the trier of fact may look to the entire record of the conviction. (People v. Guerrero, supra, 44 Cal.3d at pp. 356, 355, 243 Cal. Rptr. 688, 748 P.2d 1150.)  The court found the rule was fair because "it effectively bars the prosecution from relitigating the circumstances of a crime committed years ago and thereby threatening the defendant with harm akin to double jeopardy and denial of speedy trial."  (Id. at p. 355, 243. 688, 748 P.2d 1150.)

In finding the use of the entire record of conviction to determine if a prior conviction is a serious felony was fair because it avoided possible double jeopardy harm, the California Supreme Court impliedly found such use does not violate double jeopardy. Defendant offers no convincing reason for this court to revisit the issue.

Jackson, 2011 WL 2811221, **10-11.

/////

/////

3. Legal Standard

The Fifth Amendment's Double Jeopardy Clause protects against multiple punishments for the same offense. Ohio v. Johnson, 467 U.S. 493, 498 (1984). However, "[a]n enhanced sentence imposed on a persistent offender [ ] is not to be viewed as either a new jeopardy or additional penalty for the earlier crimes but as a stiffened penalty for the latest crime, which is considered to be an aggravated offense because a repetitive one." Monge v. California, 524 U.S. 721, 728 (1998) (internal quotation marks and citation omitted); see Almendarez–Torres, 523 U.S.at 247 (declining to adopt a rule that a recidivism enhancement would be considered an element of the offense for purposes of double jeopardy).

4. Discussion

Here, the state court's decision that the adjudication of petitioner's prior strikes did not violate his rights under the Double Jeopardy clause was neither contrary to nor an unreasonable application of clearly established federal law. See Monge v. California, 524 U.S. at 728; Almendarez–Torres, 523 U.S. at 247. Insofar as petitioner asserts that his strike convictions run afoul of the Apprendi line of cases, the undersigned has addressed that argument (see Claim III(A), supra) and found that petitioner is not entitled to federal habeas relief on that basis.

In sum, based on the foregoing, the undersigned will recommend that the petition be denied. On February 12, 2014, petitioner filed a motion for an order granting his federal habeas petition. As the merits of the petition are the subject of the instant findings and recommendations, petitioner's motion is inapposite and will be denied as such.

Accordingly, IS HEREBY ORDERED that petitioner's motion for order granting habeas petition (ECF No. 27) is denied as inapposite.

IT IS HEREBY RECOMMENDED that the petition for writ of habeas corpus (ECF No. 1) be denied and this case closed.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned

1  "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections

2  shall be served and filed within fourteen days after service of the objections.  The parties are

3  advised that failure to file objections within the specified time may waive the right to appeal the

4  District Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

5  Dated:  April 29, 2014

6                                                        _____
                                                         CAROLYN K. DELANEY
7                                                        UNITED STATES MAGISTRATE JUDGE

8

9

10

11

12  2 / jack0691.hc

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28